the provisions, common to both sections, that the issue of void marriages shall be deemed to be the legitimate children "for all purposes" of the innocent or sane parent, as the case may be.

It cannot be doubted that a child of a marriage avoided for the mental incompetency of one of its parents, but who is declared to be the legitimate child of the sane parent "for all purposes," would share, like any other legitimate child, in the distribution of such parent's estate, or that such parent, during his own lifetime and the child's infancy, would be entitled to the custody of such child. No more can we doubt that such a parent has the power to appoint by will a guardian for such a child. All these things are the natural consequences of the relation between a parent and his legitimate child. The surrogate, however, was of the opinion that, because the natural mother of the infant is living, the father could not, under section 81 of the Domestic Relations Law, lawfully appoint a guardian by will or deed, to the exclusion of the other. It is evident, however, that this section is applicable only where the infant is the legitimate child of both parents. This is clearly indicated by the first sentence of the section, which reads:

"A *married* woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them."

In the present case, the mother of the infant was not a "married woman," and the decedent was not her "husband," for the attempted marriage between them has been declared to have been void ab initio. It follows that the order appealed from must be reversed, and the matter referred back to the Surrogate's Court. All concur.

---

(164 App. Div. 171)

### CUNNINGHAM v. STATEN ISLAND RAPID TRANSIT RY. CO.

(Supreme Court, Appellate Division, Second Department. November 6, 1914.)

MASTER AND SERVANT (§ 278*) — INJURIES TO SERVANT — EMPLOYERS' LIABILITY ACT—APPLIANCES—LADDERS.

Plaintiff, a tinsmith, having gone to defendant's storehouse to hang a new gutter with one extension ladder, which was being used by plaintiff's helper, borrowed another similar ladder from a painter working on another side of the building. Plaintiff was working near the top of this ladder, when the painter requested its return and started to climb up, and when up about halfway, the ladder broke under the additional weight, throwing plaintiff down and causing serious injuries. *Held*, that in the absence of proof of defect in the ladder, or authority from defendant for the painter to mount it with plaintiff also on it, or that such a ladder was ordinarily able to carry two men, there was no such proof of negligence in failing to provide safe appliances as to entitle plaintiff to recover, under Labor Law (Consol. Laws, c. 31) § 18, or under the Employers' Liability Act (Consol. Laws, c. 31, §§ 200–204).

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

Appeal from Trial Term, Richmond County.

Action by Frank A. Cunningham against the Staten Island Rapid Transit Railway Company. From a judgment dismissing plaintiff's complaint on the merits, he appeals. Modified and affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before JENKS, P. J., and THOMAS, CARR, STAPLE-TON, and PUTNAM, JJ.

Richard J. Donovan, of New York City (Herbert D. Cohen, of New York City, on the brief), for appellant.

Lyle H. Hall, of New York City, for respondent.

PUTNAM, J. Plaintiff, a tinsmith and roofer, had taken down an old gutter on the defendant's storehouse at Clifton, S. I., and was to replace it with a new hanging gutter, to go up in 20-foot lengths. He had brought from the tinsmith's shop one ladder, joined in three sections; the end rungs going into connecting grooves or sockets. Plaintiff, who had only this ladder, which he had turned over to his helper, went around to the other side of the storehouse and asked from Mr. Coppinger, a painter there, to borrow the ladder on which Mr. Coppinger was standing. Mr. Coppinger obligingly came down and let plaintiff take his ladder, saying he must have it back soon. Plaintiff took it around, and set up and mounted on this borrowed ladder, while his helper ascended the other one, holding one end of the new gutter that was being nailed up. After plaintiff had stood on the third or fourth rung from the top, with his head above the eaves, for about 15 or 20 minutes, Mr. Coppinger came and asked for the return of his ladder, and started to come up. When Mr. Coppinger had come about halfway up, the ladder broke under this additional weight, throwing plaintiff down, with serious injuries.

The complaint charges a breach of section 18 of the Labor Law, and is also drawn under the Employers' Liability Act, so that the statutory notice was admitted on the trial. Many charges of negligence were pleaded. But the main question was whether any defect was shown in a ladder which bore plaintiff well until an intruder mounted it and doubled its load. Plaintiff testified that he had seen such a sectional ladder carry two men (at a pier in the East River with another employer) about a year and a half ago. Upon further inquiry, it came down to the statement that two men would "get off and on the ladders at the same time"—which is far from proving that such jointed ladders should carry two men near the middle of their length as extended. Hence this ladder was not shown to be unsafe or improper for the use which defendant designed or permitted. There was no evidence that the material was decayed or otherwise bad. Neither was the ladder shown to have a defect as a "way," under the Employers' Liability Act. McKay v. Hand, 168 Mass. 270, 47 N. E. 104; Heiser v. Cincinnati Abattoir Co., 205 N. Y. 379, 98 N. E. 747.

As there was no evidence of poor construction or bad material in the ladder, or authority from defendant for the painter to mount the ladder with plaintiff also on it, there was no question for the jury, and the learned trial justice rightly dismissed the complaint.

The judgment, however, must be modified, by striking out the erroneous recital that the complaint is dismissed "upon the merits," and, as thus modified, the judgment should be affirmed, without costs. All concur.